AUDREY STRAUSS
United States Attorney for the
Southern District of New York
By:     DOMINIKA TARCZYNSKA
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York  10007
Telephone:  (212) 637-2748
Facsimile:   (212) 637-2686
E-mail: Dominika.Tarczynska@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
UNITED STATES OF AMERICA *ex rel.* :
HAMID (JOE) LAHIJANI, :
 :
                   Plaintiff, :     19 Civ. 3290 (PGG)
 :
 :     **COMPLAINT-IN-**
  - against - :     **INTERVENTION OF THE**
 :     **UNITED STATES OF AMERICA**
DELTA UNIFORMS, INC., and :
GEORGE ILOULIAN (a/k/a GEORGE :     **JURY TRIAL DEMANDED**
ILLULIAN), individually, :
 :
                   Defendants. :
------------------------------------------------------------x
UNITED STATES OF AMERICA, :
 :
                 Plaintiff-Intervenor, :
 :
  - against - :
 :
DELTA UNIFORMS, INC. and :
GEORGE ILOULIAN, :
 :
                 Defendants. :
------------------------------------------------------------x

      Plaintiff the United States of America (the "Government" or the "United States"), by its attorney, Audrey Strauss, United States Attorney for the Southern District of New York, files this Complaint-in-Intervention against defendants Delta Uniforms, Inc. ("Delta Uniforms") and George Iloulian ("Iloulian") (together, "Defendants"), alleging as follows:

## PRELIMINARY STATEMENT

1. The Government brings this Complaint-In-Intervention seeking damages and civil penalties against Delta Uniforms and Iloulian under the False Claims Act, 31 U.S.C. § 3729 *et seq.* (the "FCA"), based on their knowing and fraudulent evasion of hundreds of thousands of dollars of customs duties owed on medical uniforms, footwear and other apparel imported into the United States.

2. Defendants engaged in a deliberate and intentional scheme to defraud the United States of customs duties from at least 2009 through the present (the "Relevant Period"). United States Customs and Border Protection ("CBP"), a component of the Department of Homeland Security, relies on importers to accurately report the nature and value of the goods that importers bring into the United States in assessing customs duties. Defendants, however, submitted fake invoices that deliberately and materially understated the value of their imports. They also submitted fraudulent invoices that misrepresented the fabric content of the goods being brought into the United States. They did so with the purpose and intent to fraudulently reduce the amount of duty that Defendants paid on the goods that they were importing into the country. Through these schemes, Defendants defrauded the United States out of hundreds of thousands of dollars in customs duties.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the claims brought under the FCA pursuant to 31 U.S.C. § 3730(a), and 28 U.S.C. §§ 1331 and 1345.

4. This Court may exercise personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a), which provides for nationwide service of process.

5. Venue is appropriate in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) and 1391(c) because Defendants are located in this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

6. No official of the United States charged with responsibility to act in the circumstances knew or should have known of the facts material to the FCA claims related to the fraudulent practices alleged herein prior to April 2019.

## PARTIES

7. Plaintiff is the United States of America.

8. Relator Hamid (Joe) Lahijani is a former Delta Uniforms operations manager and resides in New Jersey. In April 2019, Relator filed an action pursuant to the FCA alleging that Defendants knowingly and fraudulently evaded customs duties by directing the overseas companies from which they imported merchandise to provide Defendants with two invoices for each shipment they received from the companies: (1) the true invoice, which was used for payment by Defendants for the goods, and (2) a fabricated invoice significantly understating the value of the goods, which was used by Defendants for submission to CBP to avoid paying customs duties on the full value of the goods. Relator further alleged that in at least some instances, Defendants evaded customs duties by directing the manufacturers to misstate the nature of the fabric used in the merchandise, so that the duties would be calculated at a fraudulently lowered rate.

9. During the Relevant Period, Defendant Delta Uniforms, with its principal place of business in New York, New York, was engaged in the importation of medical uniforms, including from China, Korea, Bangladesh, and Pakistan. Delta Uniforms maintains offices at 136 West 36th Street, Suite 500, New York, NY 10018.

10. Defendant Iloulian was the president, chief executive officer, and sole owner of Delta Uniforms during the Relevant Period. Iloulian was closely involved in overseeing the day-to-day operations of Delta Uniforms. Iloulian resides in New York.

## FACTUAL ALLEGATIONS

### A. Import Entry Reporting Obligations and Payment of Customs Duties

11. All merchandise imported into the United States is required to be "entered," unless specifically excepted. 19 C.F.R. § 141.4(a); 19 U.S.C. § 1484. "Entry" means, among other things, that an importer or its agent must file appropriate documents with an officer of CBP that allow the agency to assess the customs duties due on the merchandise being imported into the United States. 19 C.F.R. § 141.0a(a).

12. The documents required to be filed with CBP in order to complete entry include: (i) a bill of lading or air waybill; (ii) a commercial invoice verifying the value of the merchandise being imported; and (iii) CBP Form 7501 (the "entry summary form") declaring the value of the merchandise and the applicable duty rate. *See, e.g.*, 19 C.F.R. §§ 141.11, 141.19(a), 141.81, 141.86(a), 142.3(a), 142.6(a).

13. Pursuant to 19 U.S.C. § 1484, the entity serving as "importer of record" is responsible for paying the customs duty and using reasonable care in making and providing accurate documentation to CBP that allows the agency to assess the customs duties due on the merchandise. 19 U.S.C. § 1484(a)(1)(B).

14. Generally, the importer of record is required to deposit estimated duties with CBP at the time of entry. 19 U.S.C. § 1505; 19 C.F.R. § 141.101. In most cases, the amount of customs duty owed is equal to the value of the imported merchandise multiplied by the applicable duty rate.

15. The value or approximate value of the imported merchandise must be declared in the commercial invoice and entry summary form. Federal law provides that every importer of record must file a declaration stating that the values set forth on these documents are accurate. 19 U.S.C. § 1485.

16. Generally, importers of record are required to declare the "transaction value" of the goods, which is the price actually paid or payable for the merchandise plus, if applicable, certain additional costs incurred with respect to the merchandise. 19 U.S.C. § 1401a(a)(1)(A), (b).

17. Additionally, importers of record are also required to identify the nature of the goods on the entry summary form by identifying the relevant Harmonized Tariff Schedule of the United States ("HTSUS" or "HTS") Code. The HTS sets out the tariff rates and statistical categories for all merchandise imported into the United States. The HTS code not only describes the type of article, but also its fabric content. For example, certain women's woven garments that are made primarily of cotton are described with the pre-fix 6211.42, whereas the same types of garments that are made primarily of man-made fibers are described with the pre-fix 6211.43. The duty rate for these cotton articles is currently 8.1%, whereas the duty rate for the same type of garment made of man-made fibers is nearly double, 16%.

18. The entry summary form includes a declaration that "the statements in the documents herein filed fully disclose to the best of my knowledge and belief the true prices, values, quantities . . . and are true and correct" and that the declarant "will immediately furnish to the appropriate CBP officer any information showing a different statement of facts." CBP Form 7501.

19. Delta Uniforms, like many other importers of record, uses a customs broker to assist them in clearing goods for entry by preparing the entry summary form and other necessary paperwork and calculating taxes and duties. The customs broker completes the entry summary

form based on the information, including invoices, provided by Delta Uniforms, which is responsible for the accuracy of the information reported to CBP.

20.     To avoid the payment of customs duties, Defendants engaged in deliberate schemes to fraudulently underpay customs duties owed to the Government in connection with medical uniforms imported into the United States, by making false representations on entry documents filed with CBP about the value and nature of the imported merchandise.

### B. Delta Uniforms' Business

21.     During the relevant period, Delta Uniforms engaged in the business of selling medical scrubs, other uniforms and clothing, and footwear used by healthcare workers to retail stores and customers in the United States.  The merchandise was imported from companies overseas, including from China, Korea, Bangladesh, and Pakistan.

22.     During the relevant period, Iloulian directed and participated in all aspects of Delta Uniforms' operations.  He negotiated prices and placed orders with overseas manufacturers.  He then made payments for those orders by wire and check from Delta Uniforms' bank account.  He further communicated with those overseas manufacturers regarding documents to be provided in connection with the entry of shipments of goods into the United States, including requesting fraudulent invoices for submission to Customs.  Iloulian then provided those fraudulent invoices to Delta Uniforms' customs broker via email for submission to CBP.

### C. Defendants' Double-Invoicing Scheme to Defraud the United States

23.     Defendants engaged in a deliberate scheme to fraudulently underpay customs duties owed to the Government in connection with medical uniforms and footwear imported from China, Korea, Bangladesh, and Pakistan by causing false representations to be made concerning the value of the goods on entry documents filed with CBP and by preparing, or causing to be prepared,

invoices that did not reflect the actual value of the goods being imported, which were also filed with CBP.

24. Specifically, Defendants engaged in a "double-invoicing" scheme pursuant to which they were provided with two sets of invoices by their exporter. The first invoice reflected the amount Defendants actually paid the exporter for the goods; the second invoice fraudulently reflected a fabricated lower amount and was submitted to CBP during the entry process. These two invoices were virtually identical (*i.e.*, they reflected the same invoice number, description of goods, and quantity of goods), except that they stated different prices for the same shipments of goods. Defendants used the amounts on the lower valued invoices to falsely declare the value of the goods to CBP in order to pay less duty. In certain instances, Defendants themselves altered the original invoices received from the manufacturer to create the fake, "second" invoices that they submitted to CBP.

25. Defendants falsely represented the value of the goods on entry summary forms that they caused to be submitted to CBP. CBP relied on these false statements in determining the duty owed on the shipments Defendants brought into the United States.

26. Iloulian was directly involved in and aware of the fraudulent scheme to underreport the value of the imported goods for the purpose of paying lower customs duties. For example, in 2012, a representative of one of Defendants' manufacturers, Qingdao Comeq Industrial Co. Ltd. ("Comeq"), laid out the scheme in an email communication to Delta Uniforms and explained that the two invoices were being provided at Iloulian's request:

> The first attachment is commercial invoice for payment
> The second attachment is invoice for your local customs declaration. **George [Iloulian] request[ed] us to offer a commercial invoice in lower cost for US local customs declaration, this is only a service from us, it doesn't mean we agree to be paid in the lower amount**. . . . As the matter of fact, we issued a lower cost invoice for all of the previous shipment[s] to you.

7

(Emphasis added.)  This email attached two invoices, each for 11,424 units of Ladies Working Uniforms, each dated May 6, 2012, and each bearing the same invoice number (S/C NO. QCT12-012QJD).  However, the first invoice (the one for payment) listed a total price of $52,912.56, and the second invoice (the one that Defendants submitted to CBP) listed a total cost of $30,996.00.

27. Similarly, in a 2011 email from a different Chinese manufacturer, Weihai Hishi Textile Import & Export Company, Ltd. ("Weihai"), to Iloulian, the manufacturer explained that two different invoices were being provided at Iloulian's request—one was the "Actual invoice" and the second was the "Custom[s] invoice in the unit price usd1.98 **as you required**" (emphasis added).  Two invoices were attached to the e-mail, both bearing identical dates, invoice numbers, and quantities.  The first reflected a unit price of $2.50 per unit for a total of $79,662 (the amount that Defendants actually paid to the manufacturer), while the second (which Defendants submitted to CBP) falsely reflected the requested unit price of only $1.98 per unit for a total of $62,999.64.

28. Defendants engaged in some variation of this type of double invoicing scheme with virtually all of the manufacturers from which they purchased goods.

29. When providing the two requested invoices, the foreign manufacturers generally identified the fake, lower-priced invoice that was to be submitted to CBP by using file names such as: "CUSTOMS INVOICE" or "FOR CUSTOMS DECLARATION."  For avoidance of any doubt as to which invoice was the real invoice, the manufacturers identified the invoice that reflected the true price, and the amount that they actually were to be paid, with file names such as: "DOCUMENT FOR PAYMENT" or "ACTUAL INVOICE."

30. In certain instances, the foreign manufacturers provided only one invoice to Defendants for a given shipment.  In these cases, however, this invoice was provided in native Excel format.  On information and belief, Iloulian, or others at Delta Uniforms at his direction,

altered the invoices by reducing the unit price and total cost of the shipment before providing the invoices to Delta Uniforms' customs broker for submission to CBP, in order to falsely undervalue the goods.

31.     Iloulian was aware that the second invoices being provided by the manufacturers at his request did not reflect the actual price that Delta Uniforms paid for the goods.  He further understood that the second invoices were being provided to him, as he requested, in order to fraudulently undervalue the goods so that Delta Uniforms would pay less in duty.

32.     The following examples illustrate how Defendants' schemes operated to artificially deflate the value of the imported apparel, and therefore enabled Defendants to avoid paying the legally required customs duties to the United States.  These examples represent only a small fraction of the hundreds of fraudulent entry records submitted by Defendants to CBP in connection with shipments of goods from overseas.

      **a.  Shipment from Comeq (HK) International Trade Co. (Later Called Quingdao Comeq Industrial Co., Ltd.)**

33.     In February 2017, a representative of Comeq sent an email directly to Iloulian attaching two invoices, one bearing the file name "QCT16-050QB-DOCUMENT FOR PAYMENT.xls," and the second bearing the file name "QCT16-050QB -INV.—FOR CUSTOMS DECLARATION.doc."  The two attached invoices both purported to be for 1,728 sets and 2,160 pieces of "Ladi[e]s working uniforms."  Both invoices were dated February 28, 2017, and both bore the same invoice number.  However, the "FOR CUSTOMS DECLARATION" invoice reflected significantly lower unit prices—$1.50/piece and $4.50/set—than those reflected on the "DOCUMENT FOR PAYMENT"—$2.50/piece and $6.50/set.  The totals on the two invoices likewise differed—$11,016 on the "FOR CUSTOMS DECLARATION" invoice and $16,632 on the "DOCUMENT FOR PAYMENT."  When the goods were entered into the United States by

Delta Uniforms on April 3, 2017, the significantly lower amount of $11,016 was falsely declared as the value of the goods on the entry summary form submitted to CBP. However, on April 28, 2017, Delta Uniforms wired $16,332 to the Comeq bank account for this shipment.

### b. Shipment from Weihai Hishi Textile Import & Export Co., Ltd.

34. On January 9, 2015, Iloulian received an email from a representative of Weihai, which attached *inter alia* two invoices: one with the file name "CUSTOMS INVOICE DS-14-073," and the second with the file name "ACTUAL INVOICE DS-14-073." Both invoices purported to be for 14,489 pieces of Ladies Scrubs "made of 55 percent cotton and 45 pct polyester". The "Customs Invoice" was in the total amount of $28,978 and the "Actual Invoice" was in the total amount of $45,337.86. The "Actual Invoice" reflected a deposit of $6,000 (previously paid on or about September 12, 2014) and requested a balance payment of $39,337.86, which Defendant Delta Uniforms paid in two installments: the first on January 20, 2015, in the amount of $20,337.96, and the second on March 17, 2015, in the amount of $19,000. Delta Uniforms entered the goods into the United States on February 16, 2015, and falsely declared their value on the entry summary form submitted to CBP as $28,978—the amount matching the false "Customs Invoice."

### c. Shipment from Jiaxing Layo Import Export Group

35. In April 2015, Iloulian negotiated a price of $1.59 per pair for "Rodeo" and "Mandy" style shoes with Chinese manufacturer Jiaxing Layo Import Export Group Co., Ltd. ("Jiaxing Layo"). On September 6, 2015, Jiaxing Layo sent Iloulian an invoice seeking payment for a shipment of "Rodeo" and "Mandy" style shoes that was to ship on September 16, 2015. The invoice was for a total amount of $14,882.40 for 9,360 pieces of Eva Shoes (styles "Rodeo" and "Mandy") priced at $1.59 per piece. Delta Uniforms paid this invoice in full via two wires: On

September 11, 2015, Delta Uniforms wired $11,579.40 to the Jiaxing Layo account; and a $3,303 deposit for this shipment had previously been wired on July 21, 2015. Iloulian then wrote to the representative of Jiaxing Layo advising, "This is the balance of your payment, please send us an invoice as usual…" On September 15, 2015, the representative responded, attaching a nearly identical invoice changed only to reflect a unit price of $0.98 for the 9,360 pieces of Eva Shoes and a total amount reduced to $9,172.80. Later that same day, Iloulian sent this altered invoice to Delta Uniforms' customs broker via email to submit to CBP. The shoes were entered into the United States on October 28, 2015, and their total value was falsely declared on the entry summary form to be only $9,173.

### d. Shipments from 4U Industry Co Limited

36. On or about December 2, 2013, a representative of 4U Industry Co. Limited ("4U Industry"), located in China, sent invoice No. 4U3046 dated November 23, 2013, in the total order amount of $29,887.20 for 16,128 pairs of Eva Clogs to Iloulian for payment. The per unit price on this invoice ranged from $1.54 to $2.01. The same day, Delta Uniforms wired $19,887 to the 4U Industry account (a $10,000 deposit had previously been wired on October 2, 2013), and Iloulian wrote to 4U Industry advising that the final payment had been made and asking: "Please send me an invoice with the price of 1.20$." Shortly thereafter, the 4U Industry representative emailed Iloulian the requested invoice, which was identical to the invoice initially provided with the exception that the unit price for all styles was $1.20 and the total order price was $19,353.60. Delta Uniforms provided this false invoice to CBP when it entered the goods into the United States on January 18, 2014, falsely declaring their value to be $19,354 on the entry summary form.

37. On or about May 13, 2020, a representative of 4U Industry provided Iloulian Invoice No. 4U3068 dated May 8, 2020, for the purchase of 10,680 pairs of clogs ranging in price

11

per unit between $1.60 and $2.23, for the total amount of $21,548.40. The invoice reflected a $5,000 previously paid down payment, which Delta Uniforms had wired to 4U Industry on May 7, 2020, and a balance due of $16,548.40, which Delta Uniforms subsequently wired in full on June 22, 2020. The original 4U Industry invoice was provided in Excel format. On or about July 2, 2020, Iloulian provided Delta Uniforms' customs broker an invoice bearing the same invoice number (4U3068) for submission to CBP. This invoice was also for 10,680 pairs of Clogs with identical models and descriptions, but the unit prices ranged between $1.20 and $1.40 per pair, and the total amount of the invoice was $14,232.00—over $7,000 less than the amount that Defendants actually paid 4U Industry for the clogs. The goods were entered into the United States on August 18, 2020, and their value was falsely declared to be only $14,232 on the entry summary form.

e. **Shipment from Xiamen Bestwinn Imp Exp**

38.     On December 24, 2013, Iloulian received Invoice No. AE2908 dated December 22, 2013, in the total amount of $17,544, from Xiamen Bestwinn Imp. & Exp. Co. Ltd. ("Xiamen Bestwinn"), located in China, for an order of 9,600 pairs of Eva Clogs priced between $1.70 and $2.04 per unit. Shortly thereafter, on December 26, 2013, Delta Uniforms wired the remaining balance due on this invoice ($10,768) to Xiamen Bestwinn (Delta Uniforms had paid a deposit of $6,776 in September 2013, when the order was placed). The following day, Iloulian requested that the manufacturer "send [him] another invoice and put the price for all @ 1.25." In response, the Xiamen Bestwinn representative provided a version of Invoice AE2908 that was identical in every way, except that the unit price for all of the styles was $1.25 per unit and the total invoice amount was $12,000. Delta Uniforms used this fake invoice when entering the shipment into the United States on January 28, 2014, falsely declaring its value to be only $12,000 on the entry summary form.

      **f.   Shipment from Lakhany Textile International**

      39.    In December 2014, Pakistani manufacturer Lakhany Textile International ("Lakhany") provided two separate invoices (both bearing the invoice number #746/2014, the date December 1, 2014, and the quantity 29,340 pieces) to Delta Uniforms in two separate emails. The first invoice in the amount of $70,374.36 was sent on December 10, 2014. Delta Uniforms then made a total payment of $70,500 by means of two wire transfers to Lakhany: the first in the amount of $40,000 on 12/11/2014, and the second in the amount of $30,500 on 12/29/2014. Lakhany provided a second invoice with the file name "INVOICE NO (R)746 DELTA USD 47602.00.xls" on December 15, 2014, attached to an email stating, "[f]ind attached Invoice No 746 as requested." The second invoice was in a lower amount of $47,602. On December 15, 2014, Iloulian emailed the second (fake, lower valued) invoice to Delta Uniforms' customs broker to be used in entering the shipment into the United States. On December 30, 2014, Delta Uniforms entered 29,340 pieces from Lakhany into the United States, falsely declaring a total value of approximately $48,400 on the entry summary form.

      **g.   Shipment from NU Look Korea Co., Ltd.**

      40.    On July 16, 2016, Nu Look Korea Co., Ltd. ("Nu Look"), a Korean manufacturer, provided Delta Uniforms with two sets of invoices, both bearing the invoice number LKDT003 and dated July 15, 2016, and both purporting to be for 7,992 pieces of mesh spandex apparel. The first invoice, bearing the file name "2016-7-17 DELTA PAYMENT DOX," reflected $17,982.00 as the cost of the goods and, in large red letters in the "Remarks" section, stated "FOR PAYMENTS." The second invoice, bearing the file name "2016-7-17 DELTA CUSTOMS DOX," stated that the cost of the goods was only $8,311.68. The "FOR PAYMENTS" invoice reflected a previously paid deposit of $7,000 made on May 3, 2016, and a balance due of $10,982.

Delta Uniforms made a wire transfer in the amount of $10,982 on July 19, 2016, to NU Look. On July 18, 2016, Iloulian emailed the second invoice reflecting the lower total amount to Delta Uniform's customs broker for use in the entry package to be submitted to CBP. Delta Uniforms entered the goods into the United States on August 18, 2016, and falsely declared their value on the entry summary form to be $8,312—the amount reflected on the lower valued invoice provided by Nu Look.

### h. Shipment from Textile Techno Commercial Consultants

41. On May 28, 2020, a representative of Textile Techno Commercial Consultants ("Textile Techno"), a manufacturer located in Pakistan, sent an email to Iloulian with the subject "REF: CORRECT / ACTUAL – Packing list & Invoice (Textile Techno – Pakistan)." In the body of the email, the Textile Techno representative twice reiterated: "Please find attached CORRECT / ACTUAL – Packing list & Invoice…" and "NOTE: These are the correct / actual packing list and invoice for the goods [that] have been loaded into container." Attached to this email was an invoice bearing the invoice number TTCC-DLT-04, dated May 21, 2020, for 18,265 pieces of scrubs uniforms (tops, pants, and sets) for a total price of $59,039.65. This invoice was provided in Excel format. Also attached to the email were wiring instructions for payment. On June 19, 2020, Iloulian sent an email to Delta Uniform's customs broker attaching an invoice bearing an identical invoice number, date, and quantity of pieces, but reflecting a unit price that was now approximately half of the price stated on the "CORRECT /ACTUAL" invoice sent by the manufacturer; the total invoice amount was reduced to only $30,539.32. On June 22, 2020, Delta Uniforms wired $56,773.40 to the Textile Techno account for this shipment. The goods were entered into the United States on June 24, 2020, and their value was falsely declared on the entry summary form as $30,539—the amount on the fabricated, altered invoice.

### D. Defendants' Misrepresentation of Fabric Content Scheme

42.     Defendants also made misrepresentations to CBP about the type of fabric used in the clothing that Delta Uniforms was importing.  Much of the clothing Delta imported was a mixture of cotton and man-made fibers, including polyester, spandex and Lycra.  Generally, goods that are made mostly of cotton are subject to lower duty rates than goods that are made mostly of man-made materials.

43.     In order to reduce the amount of customs duties they would pay to the United States, Defendants submitted false invoices to CBP on certain garment imports that mischaracterized the goods as being made predominantly of cotton, with the intention and expectation that the Government would reasonably rely on the false statements on the invoices.  The Government did, in fact, rely on Defendants' false statements in assessing and collecting duty on Delta Uniforms' imports.

44.     These false invoices were provided at Defendants' request.  For example, in a November 2011 email to a Chinese manufacturer, Shaoxing, a representative of Delta Uniforms requested specific changes to the invoices for a shipment, including: "Fabric should be listed : 55% Cotton 45% Polyester."  The manufacturer responded that that was not in fact the composition of the goods: "Any way, there is a[] very important thing I want to check. Actually, the composition of all the fabric is only 10%cotton and 90%polyester. Did Mr George [Iloulian] know that?"  Nevertheless, in December 2011, the manufacturer provided a fraudulent invoice to Delta Uniforms misrepresenting the fabric composition as 55% cotton and 45% polyester.

45.     This practice was not limited to a single manufacturer. In a May 2012 email to Chinese manufacturer Comeq, which bore the subject "INV. FOR CUSTOMS DECLRATION [sic]," Iloulian requested, "[p]lease write in invoice 55%cotton—45% poly for description, and

15

send it to me." As requested, the Comeq representative responded, "[r]e-sending two invoices," and reattached the modified invoices (both bearing the invoice number QCT12-012QJD)—a fake one for CBP (reflecting a lower value for the goods and the requested, false fabric description), and a real one for payment (in a higher amount without a description of the fabric content). Later, in June 2012 when Relator inquired about the price discrepancy between the two invoices, the Comeq representative explained that the first invoice was "for payment" and the second was "for your local customs declaration" at Illoulian's request, as detailed above in Paragraph 26.

46. In September 2014, Comeq provided a Sales Confirmation (No. QCT14-032Q) to Iloulian for two styles of Ladies Scrubs Working Uniform (Style Nos. 135SET and 140SET) made of 65% polyester and 35% cotton, at a price of $4.84/set. In October 2014, Comeq sent Iloulian an email with two sets of invoices for this order (QCT14-032Q); one identified as "FOR PAYMENT," which did not identify the fabric content of the goods and reflected their unit price as $4.84/set for a total of $45,476.64; and the second identified as "FOR CUSTOMS DECLARATION," which fraudulently described the goods as 55% Cotton / 45% polyester and as having a price of $2.90/set, for a total of $27,248.40. The same day, Iloulian provided the fraudulent invoice, which represented the same goods as being 55% cotton / 45% polyester and having a price of only $2.90/set, to Delta Uniforms' customs broker for submission to CBP in connection with the entry of the merchandise into the United States. The goods were entered into the United States on November 25, 2014. On the entry summary form, the goods were falsely described with HTS codes identifying them to be made primarily of cotton, and their value was falsely declared to be only $27,248.

47. Similarly, in July 2016, Comeq provided a Sales Confirmation (QCT16-028Q) to Iloulian for the purchase of various styles of Ladies Scrubs Working Uniform, all of which had a

fabric content of 80% Polyester / 20% cotton and unit prices ranging from $2.10 to $2.43 per piece. Iloulian signed and returned this sales confirmation, reducing the unit prices for two of the styles. After an exchange of emails regarding the unit prices, in August 2016, Iloulian returned a signed revised Sales Confirmation for the shipment reflecting updated prices ranging between $2.10 and $2.21 per unit and, again, representing the fabric content to be 80% Polyester/20% Cotton. In September 2016, Comeq sent Iloulian an email with two sets of invoices for this order—one invoice identified as "FOR PAYMENT," which did not identify the fabric content of the goods and reflected their actual prices ranging from $2.10 to $2.21 per unit, for a total invoice amount of $29,860.56; and the second invoice identified as "FOR CUSTOMS DECLARATION," which falsely declared the goods to be 55% cotton / 45% polyester and the unit price for all of the styles to be $2.00/unit, for a total invoice price of $27,720. The same day, Iloulian provided the fraudulent "FOR CUSTOMS DECLARATION" invoice, which represented the goods as being 55% cotton and 45% polyester, to Delta Uniforms' customs broker for submission to CBP in connection with the entry of the merchandise into the United States. The goods were entered into the United States on October 12, 2016. On the entry summary form, the goods were falsely described with HTS codes identifying them to be made primarily of cotton, and their value was falsely declared to be $27,720.

48.     By knowingly submitting or causing the submission of these false documents to CBP, and by failing to disclose the true nature and value of the merchandise they were importing, Defendants fraudulently avoided payment of their customs duty obligations on the full value of the merchandise they imported.

* * *

49. As a result of the schemes described above, Defendants submitted hundreds of fraudulent invoices and entry forms to the Government. These invoices undervalued the merchandise that Defendants entered into the United States by millions of dollars.

50. Defendants used these fraudulent invoices with the intention and expectation that the Government would reasonably rely on the deflated values stated on the fraudulent invoices and entry forms, and CBP in fact did rely on this false information.

51. Defendants' fraudulent invoices and resulting entry summaries were material to the Government's assessment and collection of customs duties. The Government determines the customs duties owed on imported goods based on the reported value of the goods. If Defendants had accurately reported the value of the goods imported, Delta Uniforms would have been required to pay higher duties on them.

52. By knowingly submitting the fraudulent invoices and entry summaries to CBP, and by not disclosing the amounts Defendants actually paid for the shipments, Defendants paid less than the amount of customs duties actually owed to the Government. In total, the Government estimates that Defendants underpaid customs duties by hundreds of thousands of dollars pursuant to these fraudulent schemes.

## CLAIM FOR RELIEF

**Violation of the False Claims Act**
**31 U.S.C. § 3729(a)(7) (until May 20, 2009), and**
**as amended, 31 U.S.C. § 3729(a)(1)(G) (after May 20, 2009)**
**Reverse False Claims**

53. The Government incorporates by reference each of the preceding paragraphs as if fully set forth in this paragraph.

54. The Government seeks relief against Defendants under Section 3729(a)(7) of the False Claims Act, 31 U.S.C. § 3729(a)(7) (until May 20, 2009), and, as amended, Section 3729(a)(l)(G) of the False Claims Act, 31 U.S.C. § 3729(a)(l)(G) (after May 20, 2009).

55. As set forth above, Defendants knowingly made, used, or caused to be made or used materially false records and/or statements to conceal, avoid, or decrease obligations to pay or transmit money or property, in the form of customs duties, to the United States, and knowingly concealed and knowingly and improperly avoided or decreased an obligation to pay or transmit money or property, in the form of customs duties owed, to the United States.

56. The Government incurred losses in the form of customs duties underpaid by Defendants because of their wrongful and fraudulent conduct.

57. By virtue of the materially false records or statements made or used by Defendants, the Government suffered damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, and a civil penalty as required by law for each violation.

* * *

WHEREFORE, the Government respectfully requests that judgment be entered in its favor and against Defendants as follows:

1. Treble the Government's damages on each count in an amount to be determined at trial, such civil penalties as are required by law, and an award of costs pursuant to 31 U.S.C. § 3729(a); and

2. Such further relief as is proper.

Dated:  New York, New York
        September 22, 2021

                                      Respectfully submitted,

                                      AUDREY STRAUSS
                                      United States Attorney for the
                                      Southern District of New York
                                      *Attorney for the United States of America*

By: _____
                                      DOMINIKA TARCZYNSKA
                                      Assistant United States Attorney
                                      86 Chambers Street, 3rd Floor
                                      New York, New York 10007
                                      Tel:  (212) 637-2748
                                      Fax:  (212) 637-2686
                                      dominika.tarczynska@usdoj.gov