UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA, *ex rel.*
HAMID (JOE) LAHIJANI,

    Plaintiff,

v.

DELTA UNIFORMS, INC., and GEORGE
ILOULIAN (a/k/a GEORGE ILLULIAN),
individually,

    Defendants.

------------------------------------------------------------X

19 CV 03290

RELATOR'S COMPLAINT

FILED UNDER SEAL

JURY TRIAL DEMANDED

Plaintiff-Relator Hamid (Joe) Lahijani, by his attorneys, Heidi A. Wendel, Law Office of Heidi A. Wendel PLLC, and Bertrand Madsen, Madsen Law P.C., files this Complaint against Delta Uniforms, Inc., and George Iloulian (a/k/a George Illulian) ("Defendants") on behalf of the United States of America, alleging as follows:

## PRELIMINARY STATEMENT

1. Plaintiff-Relator brings this action seeking treble damages and penalties against defendant Delta Uniforms, Inc. ("Delta"), and defendant George Iloulian (also known as George Illulian), Delta's sole owner and president and chief executive officer, (together "Defendants"), under the False Claims Act, 31 U.S.C. §§ 3729, *et seq.* ("FCA"), based on Defendants' knowing and fraudulent evasion of millions of dollars in customs duties owed on uniforms such as medical scrubs, as well as other clothing and shoes, imported into the United States by Defendants. Starting in late 2009 and continuing through the present, Defendants directed the overseas companies from which they imported merchandise to send Defendants two invoices for

shipments they received from the companies: (1) the true invoice, which was used for payment by Defendants for the goods, and (2) a bogus invoice significantly understating the value of the goods that was used by Defendants for submission to the United States Department of Homeland Security, Bureau of Customs and Border Protection, to avoid paying customs duties on the full value of the goods. In addition, in at least some instances, Defendants also directed the manufacturers to misstate the nature of the fabric used in the merchandise to obtain a lower rate of duty. By submitting bogus invoices during a ten-year period from 2009 through the present, Defendants failed to pay the United States government millions of dollars in customs duties that they owed based on the actual value and nature of the merchandise they were importing.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under the FCA pursuant to 28 U.S.C. §§ 1331 and 1345, and 31 U.S.C. § 3730(a), as well as pursuant to the Court's general equitable jurisdiction.

3. Venue is appropriate in this District pursuant to 31 U.S.C. § 3732(a) because one or more of the defendants can be found, resides, or transacts business in this District, and/or acts proscribed by 31 U.S.C. § 3729 occurred in this District. Venue is also appropriate in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE PARTIES

4. Plaintiff-Relator Hamid (Joe) Lahijani is a resident of New Jersey. He worked with defendant Delta Uniforms, Inc., as an operations manager from 2009 through spring 2018, when his relationship with Delta ended.

2

5. Defendant Delta Uniforms, Inc. ("Delta"), was established in 2009 as an importer of medical scrubs and other uniforms and clothing, as well as clogs used by health care workers. Delta's principal place of business is currently 132 West 36th Street, Suite 500, New York, NY 10018. During the time-period at issue in this Complaint, Delta was previously located at 1350 Broadway, Suite 903, New York, New York 10018. Delta imports merchandise from companies in China, Pakistan and Bangladesh and sells the merchandise to retail stores and other customers in the United States.

6. Defendant George Iloulian, who also goes by the name George Illulian, is the sole owner, the president and chief executive officer of Delta.

## FACTS

### 1. Payment of Custom Duties

7. For all merchandise imported into the United States, an importer or its agent must, using reasonable care, file appropriate documents with the United States Department of Homeland Security, Bureau of Customs and Border Protection ("CBP" or "Customs"), that allow CBP to assess the customs duties due on the merchandise. 19 U.S.C. § 1484(a)(1)(B).

8. The documents required to be filed with CBP include, among other things, (i) an entry summary (CBP Form 7501) that declares the value of the merchandise and the applicable duty rate, and (ii) a commercial invoice that provides verification of the value of the merchandise. *See, e.g.*, 19 C.F.R. §§ 141.0a, 141.19(a), 141.81, 141.86(a), 142.3(a), 142.6(a). Generally, the importer is required to deposit estimated duties with CBP at the time of entry. 19 U.S.C. § 1505; 19 C.F.R. § 141.101. The amount of customs duty owed is equal to the value of the imported merchandise multiplied by the applicable duty rate.

9. The value or approximate value of the imported merchandise must be declared in the commercial invoice and entry summary. Federal law provides that every importer must file a declaration stating that the values set forth on these documents are accurate. 19 U.S.C. § 1485.

10. The entry summary thus includes a declaration that "the statements in the documents herein filed fully disclose to the best of my knowledge and belief the true prices, values, quantities ... and are true and correct ... [and that the declarant] will immediately furnish to the appropriate CBP officer any information showing a different statement of facts." CBP Form 7501.

**2.   Defendants' Fraudulent Scheme**

11. Delta is an importer of clothing, including medical scrubs and other uniforms, as well as clogs worn by health care workers. Delta imports the merchandise from companies in China, Pakistan and Bangladesh and sells it to retail stores and other customers in the United States.

12. To avoid paying customs duties on the full value of the merchandise it imports, Delta, at the direction of Defendant Iloulian, engaged in a fraudulent scheme to present bogus entry documents, including bogus invoices, to CBP that understated the value of the merchandise imported by Delta. Through this scheme, Defendants evaded millions of dollars in customs duty obligations. In addition, with respect to at least a portion of its imports, Defendants also misstated the nature of the fabric used in the clothing to lower the rate of duty that applied to the imports. This conduct further evaded customs duties that were due from Delta with respect to the imports.

13. Defendant Iloulian directed the overseas companies from which Delta imported merchandise to prepare two invoices for shipments of merchandise to Delta: a true invoice

bearing the actual value of the merchandise being imported to Delta, and a false invoice with a greatly reduced value that Delta then submitted to CBP. Defendants thus deliberately submitted to CBP bogus entry documents, including bogus invoices, that falsely understated the value of the merchandise being imported. Defendants used these bogus records to calculate and report their purported duty obligations to the Government, with the intention and expectation that the Government would reasonably rely on the false values stated on the bogus records.

14. The Government relied on Defendants' bogus entry documents, including the bogus invoices, in assessing and collecting duty.

15. Defendants maintained and used the true invoice, which listed the actual value of the merchandise imported by Delta, to make payments to the companies from which it imported the goods. To avoid detection, however, Defendants withheld the true invoices from CBP.

16. By knowingly submitting the bogus invoices to CBP, and by not disclosing the true invoices, Defendants fraudulently underpaid customs duties they owed to the United States on the true value of the merchandise.

17. The following examples, representing a small fraction of the imports received by Defendants and of the false records submitted by Defendants to CBP, over the relevant ten-year time-period at issue in the Complaint, are illustrative of the fraudulent scheme.

**I.    Imports from Comeq (HK) International Trade Co., Ltd., later called Qingdao Comeq Industrial Co., Ltd.**

18. On numerous occasions during the period 2009 through the present, Defendants imported merchandise from Comeq (HK) International Trade Co., Ltd. (later called Qingdao Comeq Industrial Co., Ltd.), a company located in Hong Kong and then China, for which bogus invoices were submitted to CBP to evade customs duties.

19. For example, on or about May 6, 2012, Delta imported 4,620 sets and 11,424 pieces of women's uniforms from Comeq of various styles with invoice number QCT12-012QJD. *See* Exhibit A to this Complaint. At Iloulian's direction, by email dated May 7, 2012, Comeq sent him a bogus invoice, described in the email as the "Inv[oice] FOR CUSTOMS DECLARATION," for submission to CBP, as well as the true invoice for payment for the shipment by Delta. *See id.* The true invoice is in the amount of $52,912.56. *Id.* at page 3[1]. The bogus invoice is in the amount of $30,996. *Id.* at page 4. Defendants submitted the bogus invoice to CBP, thus fraudulently understating the value of the merchandise by more than 40% to avoid paying customs duties on its full value.

20. Similarly, on or about August 19, 2014, Delta imported 6,496 sets of women's uniforms from Comeq of several styles with invoice number QCT14-021Q. *See* Exhibit B to this Complaint. At Iloulian's direction, by email dated August 19, 2014, Comeq sent him a bogus invoice, described in the email as the invoice "for customs declaration," as well as the true invoice "for payment." *See* Exhibit B. The true invoice is in the amount of $50,344. *Id.* at page 4. The bogus invoice is in the amount of $18,838.40. *Id.* at page 5. Defendants submitted the bogus invoice to CBP, thus fraudulently understating the value of the merchandise by more than 60% to avoid paying customs duties on its full value.

21. Likewise, on or about March 9, 2015, Delta imported 12,147 pieces of women's uniforms of various styles with invoice number QCT15-002Q. *See* Exhibit C. At Iloulian's direction, by email dated March 11, 2015, Comeq sent him a bogus invoice, described in the email as the invoice "FOR CUSTOMS DECLARATION," as well as the true invoice "FOR

---

[1] The citations to page numbers in the exhibits to this Complaint refer to the page numbering that is hand-written on the exhibits, for ease of reference, in the lower right-hand or upper right-hand corner of each page of each exhibit.

PAYMENT." *See* Exhibit C to this Complaint. The true invoice was in the amount of $38,272.86. *Id.* at page 3. The bogus invoice was in the amount of $26,793.50. *Id.* at page 4. Defendants submitted the bogus invoice to CBP, thus fraudulently understating the value of the merchandise by nearly 30% to avoid paying customs duties on its full value.

22. Likewise, on or about February 28, 2017, Delta imported 1,728 sets and 2,160 pieces of women's uniforms with invoice number QCT16-050QB. *See* Exhibit D to this Complaint. At Iloulian's direction, by email dated February 23, 2017, Comeq sent him a bogus invoice, described in the email as the invoice "FOR CUSTOMS DECLARATION," as well as the true invoice "FOR PAYMENT." *See* Exhibit D. The true invoice was in the amount of $16,632. *Id.* at page 2. The bogus invoice was in the amount of $11,016. *Id.* at page 3. Delta submitted the bogus invoice to CBP, thus fraudulently understating the value of the merchandise by more than 33% to avoid paying customs duties on its full value.

23. The underreported invoices for Customs were prepared at Defendant Iloulian's request. For example, an email dated September 25, 2010, from Comeq to Iloulian regarding a shipment in or about September 10, 2010 states as follows:

> Dear George:
> QCT10-038Q INV. FOR CUSTOMS is the inv. **as your required**. [sic]
> QCT10-038Q INV. FOR PAYMENT is the inv. for your payment.
> Any other comments pls let me know.
> Regards,
> Jessica

*See* Exhibit E to this Complaint (emphasis added). The true invoice for the shipment – the invoice for payment – was in the amount of $133,433.16. *Id.* at page 2. The bogus invoice submitted to Customs for the shipment was in the amount of $100,588.80. *Id.* at page 3.

24. These are just a few examples of the dozens of imports Delta received from Comeq during the period 2009 through the present. With respect to each of these imports Delta

7

underreported the value of the imported merchandise to evade customs duties on the unreported portion of its value.

## II. Imports from Weihai D.S. Import and Export Co., Ltd.

25. Defendants also imported merchandise from Weihai D.S. Import and Export Co., Ltd., also called Weihai Hishi Textile Import and Export Co., Ltd., (hereinafter "Weihai"), another company in China. As in the case of Comeq, in addition to an invoice for payment, Defendants directed Weihai to provide Delta with an invoice for submission to CBP that substantially undervalued the merchandise. For example, on or about April 22, 2011, Delta imported thousands of pieces of women's scrubs of various styles from Weihai with invoice number 2010HS146B, also set forth on the paperwork as HS10-146B. *See* Exhibit F to this Complaint. At Iloulian's direction, by email dated April 22, 2011, Weihai sent him a bogus invoice, described in the email as the "Custom Invoice," for submission to CBP, as well as the true invoice for payment by Delta for the shipment. The email states as follows:

> Dear Mr. George
> How are you?
>
> Pls see below e-mail attached the shipment doc. that we send [sic] you yesterday. All the doc. contain that [sic]:
> 1). Actual invoice
> 2). **Custom invoice in the unit price usd1.98 as you required**
> 3). Balance invoice
> 4). Detailed packing list
> 5). bill of lading
>
> 2011-04-22
>
> Thanks and Best Regards
>
> Lily Jiang

*See* Exhibit F at page 1 (emphasis added). The true invoice was in the amount of $79,662.00. *Id.* at page 3. The invoice for Customs was in the amount of $62,999.64. *Id.* at page 4. (The

8

"balance invoice" was the invoice for the amount due from Delta after payment of the deposit for the shipment.) Delta submitted the bogus invoice to CBP, thus fraudulently understating the value of the merchandise by more than 20% to avoid paying customs duties on its full value. As indicated in the email, the invoice for Customs had a unit price for the goods of $1.98, as opposed to the true unit price of $2.50 per unit, which is found on the invoice for payment by Delta for the goods. *Id.* at pages 1, 3 and 4. The email shows that Defendant Iloulian directed that Weihai provide Delta with the bogus invoice for Customs with the fake unit price. *Id.* at 1.

26. Likewise, on or about June 23, 2014, Delta imported 9,684 sets and 26,919 pieces of women's scrubs in various styles from Weihai with invoice number 2014DS017. *See* Exhibit G. At Iloulian's direction, by email dated June 22, 2014, Weihai sent him a bogus invoice, described in the email as the "CUSTOMS INVOICE," as well as the "ACTUAL INVOICE" for payment by Delta. *Id.* The true invoice was in the amount of $140,142.60. *Id.* at page 7. The bogus invoice for Customs was in the amount of $90,637.20. *Id.* at page 9. Delta submitted the bogus invoice to CBP, thus fraudulently understating the value of the merchandise by more than 35% to avoid paying customs duties on its full value.

27. Similarly, on or about January 9, 2015, Delta imported 14,489 pieces of women's scrubs in several styles from Weihai with invoice number DS14-073. *See* Exhibit H. At Iloulian's direction, by email dated January 9, 2015, Weihai sent him a bogus invoice, described in the email as the "CUSTOMS INVOICE," as well as the "ACTUAL INVOICE" for payment by Delta. *Id.* The true invoice was in the amount of $45,337.86. *Id.* at page 4. The bogus invoice for Customs was in the amount of $28,978. *Id.* at page 2. Delta submitted the bogus invoice to CBP, thus fraudulently understating the value of the merchandise by approximtely 37% to avoid paying customs duties on its full value.

28. These are just a few examples of the many imports Delta received from Weihai during the period from 2009 through the present. With respect to each of these imports Delta underreported the value of the imported merchandise to evade customs duties on the unreported portion of its value.

### III. Imports from Shaoxing Luoyaer Import and Export Co., Ltd.

29. Defendants also imported merchandise from Shaoxing Luoyaer Import and Export Co., Ltd. ("Shaoxing"), another company in China. As was the case with Comeq and Weihai, in addition to an invoice for payment, Defendants directed Shaoxing to provide Delta with an invoice for submission to CBP that substantially undervalued the merchandise. For example, on or about December 15, 2011, Delta imported 32,072 pieces of women's scrubs of various styles from Shaoxing with invoice number ROYAL2010-24. *See* Exhibit I to this Complaint. At Iloulian's direction, by email dated December 15, 2011, Shaoxing sent him a bogus invoice for submission to CBP, as well as the true invoice for payment by Delta for the shipment. *See* Exhibit I. The true invoice was in the amount of $88,246.80. *Id.* at page 5. The bogus invoice for Customs was in the amount of $70,558.40. *Id.* at page 7. Delta submitted the bogus invoice to CBP, thus fraudulently understating the value of the merchandise by more than 20% to avoid paying customs duties on its full amount.

30. This is just one example of the many imports Delta received from Shaoxing from 2009 through the present. With respect to each of these imports Delta underreported the value of the imported merchandise to evade customs duties on the unreported portion of its value.

### IV. Imports from Lakhany Textile International

31. Defendants also imported merchandise from Lakhany Textile International ("Lakhany"), a company in Pakistan. As in the case of Comeq, Weihai and Shaoxing, in

addition to an invoice for payment, Defendants directed Lakhany to provide Delta with an invoice for submission to Customs that substantially undervalued the merchandise. For example, on or about December 31, 2014, Delta imported 28,116 pieces of women's scrubs from Lakhany in various styles from with invoice number 746/2014. *See* Exhibit J to this Complaint. At Iloulian's direction, Lakhany sent Delta both the true invoice for payment for the shipment and a bogus invoice for submission to Customs that understated the value of the goods. *Id.* By email dated December 10, 2014, Lakhany sent Delta the true invoice (the invoice for payment for the merchandise) in the amount of $70,374.36. *Id.* at 1-4. Five days later, on December 15, 2014, at Iloulian's request, Lakhany emailed Delta a bogus invoice to be presented to CBP for the merchandise in the amount of $47,602.20. *Id.* at pages 5-8. Delta submitted the bogus invoice to CBP, thus fraudulently understating the value of the merchandise by more than 33%. This is just one example of the many imports Delta received from Lakhany from 2009 through the present. With respect to each of these imports Delta underreported the value of the imported merchandise to evade customs duties on the unreported portion of its value.

### V. Imports from Tahsin Tex BD

32. Defendants also imported merchandise from Tahsin Tex BB ("Tashin"), a company in Bangladesh. As in the case of Comeq, Weihai, Shaoxing and Lakhany, in addition to an invoice for payment, Defendants directed Tahsin to provide Delta with an invoice for submission to Customs that substantially undervalued the merchandise. For example, on or about July 20, 2013, Delta imported 16,254 pieces of women's clothing in various styles from Tahsin with invoice number TTEXBD/01/2013(44). *See* Exhibit K. At Iloulian's request, Tashin provided Delta with two invoices for the shipment – a bogus invoice to be presented to CBP and a true invoice for payment by Delta for the merchandise. *Id.* The true invoice was in

the amount of $34,468.20. *Id.* at page 8. The bogus invoice was in the amount of $21,343.05. *Id.* at page 2. Delta submitted the bogus invoice to CBP, thus fraudulently understating the value of the merchandise by appoximtely 33%. This is just one example of the many imports Delta received from Tahsin from 2009 through the present. With respect to each of these imports Delta underreported the value of the imported merchandise to evade customs duties on the unreported portion of its value.

### VI. False Claims About Type of Fabric Used in the Merchandise

33. To further defraud the United States of customs duties, Defendants also made false claims about the type of fabric used in the clothing it was importing. Much or all of the clothing Delta imported was a mixture of cotton and man-made fibers, including polyester, spandex and Lycra. To take advantage of lower rates of duty on clothing containing mostly cotton as opposed to man-made materials, Delta falsely stated on many of the bogus invoices it submitted to CBP that the clothing was predominantly made of cotton, even when that was not true. This was a second type of fraud Defendants perpetrated on the United States government to evade customs duties, in addition to its understatement of the value of the merchandise Delta was importing.

34. Defendants submitted false invoices to CBP that misstated the type of fabric used in the clothing with the intention and expectation that the Government would reasonably rely on the false statements on the invoices and the Government relied on Defendants' false statements in assessing and collecting duty on Delta's imports.

35. By knowingly submitting the false documents to CBP, and by failing to disclose the true nature of the merchandise it was importing, Delta avoided payment of its customs duty obligations on the full value of the merchandise it imported.

## FIRST CLAIM

### Violations of the False Claims Act
### (31 U.S.C. § 3729(a)(7) (2006), and as amended, 31 U.S.C. § 3729(a)(1)(G))
### Reverse False Claims

36. Plaintiff-Relator incorporates by reference each of the preceding paragraphs as if fully set forth in this paragraph.

37. On behalf of the Government, Plaintiff-Relator seeks relief against Defendants under Section 3729(a)(7) of the False Claims Act, 31 U.S.C. § 3729(a)(7) (2006), and, as amended, Section 3729(a)(1)(G) of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G).

38. As set forth above, Defendants knowingly made, used, or caused to be made or used false records and/or statements to conceal, avoid, or decrease obligations to pay or transmit money or property, in the form of customs duties, to the United States.

39. The Government incurred losses relating to customs duties wrongfully underpaid by Defendants because of their wrongful and fraudulent conduct.

40. By virtue of the false records or statements made by Defendants, the Government suffered damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, and a civil penalty as required by law for each violation.

## SECOND CLAIM

### Common Law Fraud

41. Plaintiff-Relator incorporates by reference each of the preceding paragraphs as if fully set forth in this paragraph.

42. Defendants knowingly made material misrepresentations and/or material omissions of fact to the Government in connection with the importation of merchandise into the United States.

43. Defendants intended that the Government would rely upon those false representations and/or omissions.

44. The Government did, in fact, rely upon those false representations and/or omissions.

45. Defendants' actions caused the United States to be damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff-Relator, on behalf of the Government, respectfully requests that judgment be entered in its favor and against Defendants as follows:

    a. On the First Claim for Relief (Violation of the False Claims Act), treble the Government's damages in an amount to be determined at trial, such civil penalties as are required by law, and an award of costs pursuant to 31 U.S.C. § 3729(a);

    b. On the Second Claim for Relief (Common Law Fraud), the Government's damages in an amount to be determined at trial, together with costs and interest;

    c. Such further relief as is just and proper.

Dated: New York, New York
April 12, 2019

BY: _____
HEIDI A. WENDEL (HW-2854)
Law Office of Heidi A. Wendel PLLC
43 West 43rd Street, Suite 184
New York, NY 10036
Tel. No.: (917) 854-1645
hwendel@heidiwendellaw.com

BY: _____
BERTRAND MADSEN (BM-3715)
Madsen Law P.C.
1115 Broadway, 11th Floor
New York, NY 10010
Tel. No.: (212) 346-7744
Fax No.: (917) 924-2135
bmadsen@madsenlawpc.com