UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
UNITED STATES OF AMERICA *ex rel.*  :
HAMID (JOE) LAHIJANI,                :
                                     :          19 Civ. 3290 (PGG)
            Plaintiff,               :
                                     :
    - against -                      :
                                     :
DELTA UNIFORMS, INC., and            :
GEORGE ILOULIAN (a/k/a GEORGE        :
ILLULIAN), individually,             :
                                     :
            Defendants.              :
-------------------------------------------------------------x
UNITED STATES OF AMERICA,            :
                                     :
            Plaintiff-Intervenor,    :
                                     :
    - against -                      :
                                     :
DELTA UNIFORMS, INC. and             :
GEORGE ILOULIAN,                     :
                                     :
            Defendants.              :
-------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF-INTERVENOR UNITED STATES OF AMERICA'S
## MOTION FOR SUMMARY JUDGMENT

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2737
dominika.tarczynska@usdoj.gov

*Attorney for Plaintiff-Intervenor*
*United States of America*

DOMINIKA TARCZYNSKA
Assistant United States Attorneys
– Of Counsel –

# TABLE OF CONTENTS

Preliminary Statement...................................................................................................................1

Background ......................................................................................................................................2

    A. Factual Background ..............................................................................................................2

    B. Criminal Procedural History ...............................................................................................3

    C. Civil Procedural History ......................................................................................................4

Legal Standards...............................................................................................................................6

    A. Summary Judgment Legal Standard ....................................................................................6

    B. The FCA's Relevant False Claims Provision ......................................................................7

Argument .........................................................................................................................................9

    A. The Government is Entitled to Summary Judgment on Its FCA Claim and Iloulian's Guilty Plea and Criminal Conviction Estop Defendants from Denying FCA Liability for the Same Conduct that Resulted in the Conviction .................................................9

    B. The Court Should Enter a Judgment in the Amount of $1,287,360............................... 11

        1. Treble the Restitution Amount ...................................................................................... 11

        2. Penalties ........................................................................................................................ 12

Conclusion .................................................................................................................................... 16

# TABLE OF AUTHORITIES

Cases

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................. 8, 9

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ..................................................................................................... 8

*Cook County, Ill. v. U.S. ex rel. Chandler*,
    538 U.S. 119 (2003) ................................................................................................... 17

*New York v. Julius Nasso Concrete Corp.*,
    202 F.3d 82 (2d Cir. 2000) ........................................................................................ 11

*United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*,
    878 F.3d 1224 (10th Cir. 2017) ................................................................................... 9

*United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*,
    839 F.3d 242 (3d Cir. 2016) ...................................................................................... 10

*United States ex rel. Foreman v. AECOM*,
    19 F.4th 85 (2d Cir. 2021) ........................................................................................... 9

*United States ex rel. Grubea v. Rosicki, Rosicki & Assocs., P.C.*,
    318 F. Supp. 3d 680 (S.D.N.Y. 2018) ......................................................................... 9

*United States ex rel. Kline v. Docs at the Door, P.C.*,
    2023 WL 2631647 (N.D. Ill. Mar. 24, 2023) ............................................................ 13

*United States ex rel. Landis v. Tailwind Sports Corp.*,
    51 F. Supp. 3d 9 (D.D.C. 2014) ................................................................................... 9

*United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*,
    501 F. Supp. 2d 51 (D.D.C. 2007) ............................................................................ 17

*United States ex rel. Miller v. Citigroup Inc.*,
    2022 WL 3030707 (S.D.N.Y. Aug. 1, 2022) ............................................................ 12

*United States ex rel. Schwedt v. Planning Research Corp.*,
    59 F.3d 196 (D.C. Cir. 1995) .......................................................................... 14, 15, 16

*United States ex rel. University Loft Company v. Blue Furniture Solutions, LLC*,
    2018 WL 4494999 (W.D.Tex. Sept. 18. 2018) ......................................................... 10

*United States ex rel. Wheeler v. Union Treatment Centers, LLC*,

2019 WL 5026934 (W.D. Tex. July 1, 2019) ...................................................... 13

*United States v. Aleff*,
    772 F.3d 508 (8th Cir. 2014)......................................................................... 18

*United States v. Bickel*,
    2006 WL 1120439 (C. D. Ill. 2006)............................................................... 14

*United States v. Convalescent Transports, Inc.*,
    2007 WL 2090210 (E.D.N.C. July 19, 2007) ................................................ 14

*United States v. Grossman*,
    2002 WL 1349749 (S.D.N.Y. June 20, 2002)................................................ 13

*United States v. Iloulian*,
    21 Cr. 579 (PGG) ............................................................................................ 5

*United States v. Karron*,
    750 F. Supp. 2d 480 (S.D.N.Y. 2011)............................................. 10, 11, 13, 18

*United States v. Lamanna*,
    114 F. Supp. 2d 193 (W.D.N.Y. 2000) .......................................................... 10

*United States v. Mastellone*,
    2011 WL 4031199 (S.D.N.Y. Sept. 12, 2011) .......................................... 10, 13

*United States v. Peters*,
    927 F. Supp. 363 (D. Neb.1996) .................................................................... 14

*United States v. Saavedra*,
    661 F. App'x 37 (2d Cir. 2016)...................................................................... 14

*United States v. Szilvagyi*,
    398 F. Supp. 2d 842 (E.D. Mich. 2005) ........................................................ 14

*United States v. Zaky*,
    2015 WL 4603405 (D. Conn. July 30, 2015) ................................................ 10

Statutes

18 U.S.C. § 1349.................................................................................................... 5, 6
31 U.S.C. § 3729................................................................................................ passim
31 U.S.C. § 3730........................................................................................................ 6
31 U.S.C. § 3731................................................................................................ 10, 11
19 U.S.C. § 1401a.................................................................................................. 4, 5

Regulations

19 C.F.R. Part 142............................................................................................. 4
19 C.F.R. Part 143............................................................................................. 4
19 C.F.R. § 141.61............................................................................................ 4
19 C.F.R. § 142.3.............................................................................................. 4
19 C.F.R. § 111.23............................................................................................ 4
28 C.F.R. § 85.3................................................................................................ 11
28 C.F.R. § 85.5.................................................................................... 11, 14, 17

## PRELIMINARY STATEMENT

The United States of America (the "United States" or the "Government"), by its attorney, Damian Williams, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Defendant George Iloulian ("Iloulian"), president and owner of Defendant Delta Uniforms, Inc. ("Delta Uniforms), has already pleaded guilty to the very conduct underlying the Government's False Claims Act ("FCA") claim in this action—namely, that he submitted false statements to United States Customs and Border Protection ("CBP") in connection with apparel brought into the United States by Delta Uniforms and as a result underpaid customs duties owed to the United States in the amount of $249,000. Because of Defendant Iloulian's guilty plea and conviction, he and his company, Defendant Delta Uniforms, are estopped from denying that they are liable under the FCA for knowingly submitting these false statements to avoid paying the full amount of duties owed on the imported goods.

Pursuant to the FCA's treble damages provision, the United States is entitled to a judgment of $747,000 ($249,000 x 3) in treble damages (less any amount paid in restitution in the criminal proceeding). In addition, the Government respectfully seeks a statutory civil penalty in the amount of $540,360, which is calculated based on applying the maximum FCA civil penalty for each of 20 representative shipments where Defendants knowingly misrepresented the value of the imported apparel in violation of the FCA. Accordingly, the Government is entitled to a judgment against Defendants jointly and severally in the amount of $1,287,360 (less any amount paid in restitution in the criminal proceeding).

# BACKGROUND

## A. Factual Background

Iloulian is the president and owner of Delta Uniforms, a company that imported clothing and footwear from manufacturers located abroad for sale in the United States. *See* Local Rule 56.1 Statement of Material Undisputed Facts ("56.1") ¶¶ 1-2. In connection with these imports, Delta Uniforms, through its customs broker, submitted certain information to CBP regarding the goods that were being brought into the country, including, *inter alia*, the value of the goods. *Id* ¶ 3. Delta Uniforms was the "importer of record" on these imports. *See id.* ¶ 4.

When goods are brought into the country, importers are required to submit a Customs "entry," that includes certain information regarding the products being brought into the country, including their value. *See id.* ¶ 26. *See* 19 C.F.R. § 141.61; 19 C.F.R. Part 142. This is generally done by a customs broker who can submit the required information to CBP electronically through CBP's Automated Commercial Environment (ACE). *Id.* ¶ 29. *See* 19 C.F.R. Part 143. Importers and their customs brokers are also required to maintain a CBP Form 7501 (Entry Summary) and a commercial invoice stating the value of the goods entered. *Id.* ¶ 30. *See* 19 C.F.R. § 142.3. Customs brokers are required to maintain for a 5-year period, and make available upon request to the Department of Homeland Security for inspection, all documentation supporting an entry of goods into the United States. *See* 19 C.F.R. §§ 111.23; 111.25, 143.37.

Importers of record are generally required to declare the "transaction value" of the goods that are bring brought into the United States, which is the price actually paid or payable for the merchandise plus, if applicable, certain additional costs incurred with respect to the merchandise. 19 U.S.C. §§ 1401a(a)(1)(A), 1401a(b). The duties to be paid to the United States are then calculated based on the declared value of those goods. 56.1 ¶ 27. In most cases, the customs duty

owed is equal to the value of the imported merchandise multiplied by the applicable duty rate. *See* 56.1 ¶ 27-28.

Between at least 2010 and 2020, Defendants caused false statements to be made to CBP regarding the value of goods that Delta Uniforms imported into the United States. *See id.* ¶ 6, 14. Specifically, although Defendants received invoices from the overseas manufacturers reflecting the actual amount paid for of the goods, they submitted to their customs broker otherwise identical invoices that reflected fabricated lower prices for the goods. *Id.* ¶ 14-17, 33-93. Based on these fraudulent invoices, the custom's broker (on Delta Uniforms' behalf, as the importer of record) submitted a CBP Form 7501 (or its electronic equivalent) that falsely declared the value of the goods to be lower than it actually was. *Id.* ¶ 14-15, 93. As a result of these false records and statements, Defendants paid less in customs duties than they were required to pay for the imported goods. *Id.* ¶¶ 14-15.

### B. Criminal Procedural History

On September 23, 2021, Iloulian was criminally charged in a three-count Indictment with (1) conspiracy to commit wire fraud, (2) wire fraud, and (3) effecting the entry of falsely valued goods. *See* 56.1 ¶¶ 8-9; *United States v. Iloulian*, 21 Cr. 579 (PGG). Count 1 of the Indictment alleged that between at least 2010 and until at least 2020, Iloulian, through his company, submitted fraudulent invoices to CBP that understated the value of apparel imported into the United States and misstated the fabric content of the goods, thereby depriving the United States of duty revenue. *See* 56.1 ¶¶ 9-12.

On July 26, 2022, Iloulian pleaded guilty to Count 1 of the Indictment, conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. *Id.* ¶ 13. During the plea hearing, Iloulian admitted to each element of the offense. *Id.* ¶ 18. He admitted that "under [his] company [Delta Uniforms], from 2010 until 2022, [he] changed some of the invoices for the custom[s], and … paid

less for the duty." *Id.* ¶ 14. He further admitted that when he imported apparel into the United States he was obligated to make representations to CBP about, *inter alia,* the price of the goods, and that the invoices that he submitted to CBP included a value for the apparel that was less than what he had actually paid for it. Iloulian further admitted that, as a result of giving CBP inaccurate information as to the price of the apparel that he had purchased, he paid less in duty. *Id.* ¶ 15. He also admitted that he understood at the time that what he was doing was wrong and illegal. *Id.*

At the plea hearing, the Government proffered that "there were e-mails that were sent from Delta Uniforms' email account, some of which are signed with the defendant's name, and with those e-mails, [Iloulian] or Delta Uniform was e-mailing with overseas manufacturers regarding these bogus invoices." *Id.* ¶ 16. The Government further proffered that the "bogus invoices were then transmitted from the Delta Uniforms' account to a customs broker, who then submitted the false invoices to the government." *Id.* Iloulian agreed with the Government's foregoing proffer regarding the use of e-mails in furtherance of the scheme. *Id.* When asked whether the "phony invoices were prepared . . . in Manhattan," Iloulian clarified that "some came direct from [overseas]. They sent the original and the fake one." *Id.* ¶ 17.

Iloulian agreed to the forfeiture of $249,000 "representing proceeds traceable to the commission of the offense charged in Count One of the Indictment." *Id.* ¶ 19. Iloulian was sentenced on April 11, 2023, to six months imprisonment, and ordered to pay $249,000 in restitution to CBP. *Id.* ¶¶ 20-23. The final Criminal Judgment was entered against him on April 13, 2023. *Id.* ¶ 24.

### C. Civil Procedural History

This action was commenced by relator Joe Lahijani ("Relator") under the *qui tam* provisions of the FCA on or about April 12, 2019. ECF No. 9. On September 22, 2021, the Government intervened in the action pursuant to 31 U.S.C. § 3730(b)(2), ECF No. 6, and filed its

civil complaint-in-intervention under seal to allow coordination with ongoing related criminal proceedings, ECF No. 7 ("Compl."). The Government's complaint-in-intervention alleged that Defendants Delta Uniforms and Iloulian engaged in a deliberate and intentional scheme to defraud the United States of customs duties from at least 2009 through 2021 by submitting fake invoices to CBP that deliberately and materially understated the value of imports, and misrepresented the fabric content of the goods being brought into the United States, thereby defrauding the United States of hundreds of thousands of dollars in customs duties owed. *See, e.g.*, Compl. ¶ 2.

On September 24, 2021, the civil action was unsealed, *see* ECF No. 6. The Government sent Defendants waiver of service requests on October 4, 2021, which were executed by Defendants' counsel at the time, Hadassa Waxman,[1] on November 6, 2021, and filed on the docket by the Government on November 18, 2021. *See* ECF Nos. 11 & 12.

On November 30, 2021, the parties jointly moved for a stay of the civil matter pending resolution of the criminal matter against Iloulian. ECF No. 13. The Court granted the parties' motion, and the civil matter was stayed on December 14, 2021. ECF No. 14. On May 4, 2023, the Government filed a motion to lift the stay in the civil case. ECF No. 18. The stay was lifted on May 8, 2023, following Iloulian's guilty plea and sentencing and entry of the Criminal Judgment. ECF No. 19. Pursuant to the order staying the matter as well the order lifting the stay, Defendants were required to file their answer or other responsive pleading to the complaint on or

---

[1] Ms. Waxman represented Mr. Iloulian in the criminal matter. She was also involved in prior discussions with the Government regarding a potential resolution of the claims in the civil action. In advance of filing this motion, the Government contacted Ms. Waxman and she indicated that she is not representing Defendants in the civil action and would not accept service of the Government's summary judgment motion on their behalf. The Government has not received any notice that Defendants have retained new counsel. The Government will serve this motion directly on Defendants in accordance with Federal Rule of Civil Procedure 5(b).

about July 3, 2023.  *See* ECF No. 14 at 6; ECF No. 19 at 1. To date, Defendants have not filed an answer or otherwise filed a responsive pleading to the Government's complaint-in-intervention.

On October 4, 2023, the Government filed a pre-motion conference letter requesting to file a motion for summary judgment.  ECF No. 20.  On January 18, 2024, the Court granted the Government's request and ordered that the Government file its moving papers by February 2, 2024.  ECF No. 21.

## LEGAL STANDARDS

### A.     Summary Judgment Legal Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary judgment when the evidence "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Federal Rule of Civil Procedure 56(b) provides that "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery."

The party seeking summary judgment has the initial burden of production, which may be satisfied by affirmative evidence negating the non-movant's case or by demonstrating "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has met its initial burden of production, the burden then shifts to the non-movant to "set forth the specific facts showing that there is a genuine issue for trial." *See* Fed. R. Civ. P. 56(e)(2). In that regard, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual

disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248 (citation omitted).

### B. The FCA's Relevant False Claims Provision

The FCA imposes liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). "Subsection (a)(1)(G) is referred to as the reverse false claims provision because it covers claims of money owed to the government, rather than payments made by the government." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 119 (2d Cir. 2021), *cert. denied sub nom. U.S. ex rel. Foreman v. AECOM*, 142 S. Ct. 2679 (2022); *see also United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, 878 F.3d 1224, 1230 (10th Cir. 2017) ("[T]he reverse-false-claims provision, 31 U.S.C. § 3729(a)(1)(G), reverses the typical claim under the False Claims Act: instead of creating liability for wrongfully obtaining money from the government, the reverse-false-claims provision creates liability for wrongfully avoiding payments that should have been made to the government."). This "provision applies whenever a defendant has decreased 'an obligation' to pay the Government." *United States ex rel. Grubea v. Rosicki, Rosicki & Assocs., P.C.*, 318 F. Supp. 3d 680, 703 (S.D.N.Y. 2018) (quoting *United States ex rel. Landis v. Tailwind Sports Corp.*, 51 F. Supp. 3d 9, 60 (D.D.C. 2014)).

The FCA defines the term "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). "Knowingly" means that a person "(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b). The FCA requires "no proof of specific

intent to defraud." 31 U.S.C. § 3729(b)(1)(B). Courts have recognized that the knowing submission of false statements to CBP to avoid or reduce the amount of customs duties paid gives rise to reverse false claims under the FCA. *See United States ex rel. Univ. Loft Co. v. Blue Furniture Solutions, LLC*, No. 1:15-CV-588-LY, 2018 WL 4494999, at *2-5 (W.D. Tex. Sept. 18, 2018 (finding that the United States had adequately alleged "reverse false claim" FCA violations by a furniture importer, which allegedly falsified Customs documents and packaging slips to avoid paying millions of dollars in anti-dumping fees); *see also United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242, 258 (3d Cir. 2016) ("failure to pay marking duties may give rise to reverse false claims liability").

The FCA bars a defendant from contesting "in a subsequent civil proceeding . . . those matters determined by the judgment in the criminal case." *United States v. Lamanna*, 114 F. Supp. 2d 193, 195 (W.D.N.Y. 2000) (internal quotation marks omitted). The FCA contains an express estoppel provision giving preclusive effect to a criminal conviction on future civil actions. It says,

> Notwithstanding any other provision of law, the Federal Rules of Criminal Procedure, or the Federal Rules of Evidence, a final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730.

31 U.S.C. § 3731(e). This provision of the FCA "prevents defendants convicted in a criminal proceeding from denying the essential conduct for which they were convicted." *United States v. Zaky*, No. 3:12-cv-01661-WWE, 2015 WL 4603405, at *2 (D. Conn. July 30, 2015) (granting summary judgment to government on FCA violations after defendant was convicted in related criminal case); *United States v. Mastellone*, No. 10 Civ. 7374 (DLC), 2011 WL 4031199, at *3 (S.D.N.Y. Sept. 12, 2011) (granting summary judgment pursuant where defendant pleaded guilty in a criminal proceeding related to the same underlying transaction); *United States v. Karron*, 750

F. Supp. 2d 480, 491 (S.D.N.Y. 2011) (concluding that pursuant to § 3731(e) defendant's "prior conviction is entitled to preclusive effect and that entry of summary judgment in favor of the Government is proper,"), *aff'd*, 481 Fd. App'x 703 (2d Cir. 2012).

With respect to available monetary relief, the FCA provides that a person is liable to pay treble damages suffered by the United States, along with civil penalties in a set range. 31 U.S.C. § 3729(a)(1). That penalties range is adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 and has increased over time. *Id.* For the conduct here that occurred before November 2, 2015, the applicable statutory penalty range is $5,500 to $11,000. 28 C.F.R. § 85.3(a)(9). For conduct that occurred after that date, the current applicable statutory penalty range is $13,508 to $27,018. *See* 28 C.F.R. § 85.5(a).

## ARGUMENT

### A. The Government is Entitled to Summary Judgment on Its FCA Claim and Iloulian's Guilty Plea and Criminal Conviction Estop Defendants from Denying FCA Liability for the Same Conduct that Resulted in the Conviction

The Government is entitled to summary judgment because Defendants cannot dispute liability on the FCA claim as it is based on the same conduct and transactions that underly Iloulian's criminal conviction. "The preclusive effect of a criminal conviction on future civil proceedings is well established." *Karron*, 750 F. Supp. 2d at 487. "Indeed '[a] criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case.'" *Id.* (quoting *New York v. Julius Nasso Concrete Corp.*, 202 F.3d 82, 86 (2d Cir. 2000)). "For claims arising under the FCA, an analogous principle of collateral estoppel is codified at 31 U.S.C. § 3731(e)." *Id.*

To establish liability under the FCA's reverse false claims provision, the Government must demonstrate that Defendants "knowingly ma[de]. . . or cause[d] to be made . . . a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). This can be shown by establishing "the existence of an 'obligation' to pay the Government that the defendant 'knowingly conceals or knowingly and improperly avoids or decreases.'" *United States ex rel. Miller v. Citigroup Inc.*, No. 19CV10970 (DLC), 2022 WL 3030707, at *2 (S.D.N.Y. Aug. 1, 2022) (quoting 31 U.S.C. § 3729(a)(1)(G)).

Iloulian's guilty plea establishes those elements. He admitted that he, through his company Delta Uniforms, caused false statements to be submitted to CBP that reflected a lower price for the imported goods than he had actually paid for them. *See* 56.1 ¶¶ 14-15. He acknowledged that he knew at the time he knew what he was doing was wrong and illegal. *Id.* ¶ 15 He further admitted that as a result he paid less in customs duties than what he would have owed if the value of the goods had been accurately reported. *Id.* ¶¶ 14-15. Thus, Iloulian has admitted, and is precluded from disputing, that he knowingly caused false records statements to submitted to CBP to avoid his obligation to pay the actual amount of customs duties owed on the imported goods during the period 2010 to 2020 (which is the time period alleged in Count 1 of the Indictment).

Iloulian's guilty plea and criminal conviction provide the basis for summary judgment against both him and Delta Uniforms. During his plea colloquy, he specifically described Delta Uniforms as *his* company and that the false statements were made to CBP "under [his] company." In such circumstances, courts have granted summary judgment in FCA cases against companies when their presidents and/or sole owners have pleaded guilty to engaging in the same underlying

conduct on behalf of their company. *See, e.g., United States ex rel. Kline v. Docs at the Door, P.C.*, No. 13 C 7837, 2023 WL 2631647, at *6 (N.D. Ill. Mar. 24, 2023) (granting summary judgment and finding that "under both the FCA estoppel provision and the common law doctrine of collateral estoppel, both [the individual defendant and the small business that he operated] are precluded from denying facts that [the individual defendant] acknowledged under oath in his guilty plea."); *United States ex rel. Wheeler v. Union Treatment Centers, LLC*, No. SA-13-CA-004-XR, 2019 WL 5026934, at *4 (W.D. Tex. July 1, 2019) (granting summary judgment on FCA claim against company based on guilty plea of its founder, chairman, president, and sole shareholder relating to the same underlying conduct because "the evidence sufficiently establishes that [the individual defendant] acted with the intent to benefit" the company and thus "his knowledge and intent may be imputed" to the company).

### B. The Court Should Enter a Judgment in the Amount of $1,287,360

#### 1. Treble the Restitution Amount

When found to have violated the FCA, a defendant "is liable to the United States Government for . . . 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a)(1); *see also Karron*, 750 F. Supp. 2d at 492; *United States v. Grossman,* No. 01 Civ. 603 (NRB), 2002 WL 1349749, at *1 (S.D.N.Y. June 20, 2002). A judgment in the amount of treble damages plus penalties, with a "credit . . . for any amount that has been or will be paid to the Government in restitution in the criminal action" is appropriate  in an FCA case where there has been a criminal plea, *Mastellone*, 2011 WL 4031199, at *3 (awarding treble damages plus penalties with an offset for any restitution payments made in the criminal action); *Karron*, 750 F. Supp. 2d at 493 (awarding treble damages less any amount that defendant paid or will pay in restitution in the criminal action).

Courts often look to the amount ordered in restitution in setting the single damages amount in a FCA case where there has also been a criminal conviction. *See, e.g., United States v. Szilvagyi*, 398 F. Supp. 2d 842, 849–50 (E.D. Mich. 2005) (awarding treble damages based on restitution figure found by court in related criminal prosecution for health care fraud); *United States v. Convalescent Transports, Inc.*, No. 4:03-CV-32-FL, 2007 WL 2090210, at *6 (E.D.N.C. July 19, 2007) (finding that the restitution amount "represents the amount of damages the Government sustained because of the act of defendants, for purposes of 31 U.S.C. § 3729(a)" (internal quotation omitted)); *United States v. Bickel*, 2006 WL 1120439, *4 (C. D. Ill. 2006) (trebling actual damages portion of restitution amount from underlying criminal action); *United States v. Peters*, 927 F. Supp. 363, 368 (D. Neb.1996) (trebling restitution award).

Here, the Criminal Judgment establishes that the underpayment of duties to CBP as a result of Defendants' fraud was at least $249,000. *See* 56.1 ¶ 23 (Criminal Judgment orders payment of $249,000 in restitution to CBP); *see also* ¶ 19 (Forfeiture Order signed by Iloulian and entered by the Court in the criminal case indicates that $249,000 represents the amount of proceeds traceable to the offense); *id.* ¶ 19 (during the plea, Iloulian agreed to the foreifture of $249,000). Accordingly, the Court should require Defendants to pay treble damages in the amount of $747,000.

## 2. Penalties

Liability under the FCA also triggers the imposition of civil penalties. 31 U.S.C. § 3729(a)(1) (a person liable under the FCA "is liable to the United States Government for a civil penalty"); 28 C.F.R. § 85.5(a) (adjusting penalties for inflation). The FCA provides that a penalty be assessed for each false claim submitted or each false statement made to the Government. *See United States v. Saavedra*, 661 F. App'x 37, 45-46 (2d Cir. 2016) (upholding imposition of maximum FCA penalty for each of the defendant's 13 false statements); *United States ex rel.*

*Schwedt v. Planning Research Corp.*, 59 F.3d 196, 199 (D.C. Cir. 1995) ("Each individual false claim or statement triggers the statute's civil penalty.").

Here, Defendants violated the FCA each time they, through their customs broker, falsely misstated the value of the goods they brought into the country. It is appropriate to impose a penalty for each false statement and each distinct FCA violation. As the Court noted during Iloulian's sentencing, "the scheme involved . . . the preparation of *countless* fraudulent documents that were submitted to U.S. Customs officials." *See* 56.1 ¶ 21 (emphasis added). And Iloulian admitted during his plea that, from 2010 until 2022, he changed invoices that were submitted to CBP and as a result paid less in duties. *Id.* ¶¶ 14-15.

The Government seeks an FCA civil penalty for each of 20 representative shipments during the period 2016 through 2020 where Defendants knowingly misrepresented the value of the imported apparel in violation of the FCA. The Government has submitted records relating to these 20 shipments that indisputably establish that Defendants falsely reported the value of the apparel included in these shipments to avoid paying the full customs duties owed. Specifically, for each of these shipments, the Government has submitted the Form 7501, which we obtained from Defendants' customs broker, that resulted in the underpayment of customs duties. *See* 56.1 ¶¶ 32-92. The Form 7501 reflects the value declared to CBP. In addition, for each of these shipments, the Government has also submitted the invoice Defendants received from the overseas manufacturer that reflected the actual price of these goods, which was substantially higher amount than the value reported on the Form 7501. In certain instances, these invoices were explicitly described as the "For Payment" invoice, *see, e.g., id.* ¶¶ 40, 49, 52. In addition, the Government has submitted the false version of the invoice that Defendants provided the custom broker for each customs entry, which was included as supporting documentation to the Form 7501 maintained by

the broker, that includes the same invoice number, item description, and item quantity as the invoice sent by the overseas manufacturer. *See id.* ¶¶ 32-92. The only difference is the lower, inaccurate price.

In certain instances, the overseas manufacturer would send two versions of the invoice (a version with the real price and a version with the false lower price). In other instances, the manufacturer would send only the version with the actual price in either Excel or Word format— *i.e.* a format which could be edited—and the invoice was altered before being provided to the customs broker for submission to CBP. *See* 56.1 ¶ 11 (Indictment); ¶¶ 14, 17 (sentencing hearing). The following examples are illustrative of these two scenarios of how Defendants caused false statements to be submitted to CBP to reduce the customs duties that they paid:

Example 3 (*See* 56.1 ¶¶ 39-41): On or about December 28, 2016, Delta Uniforms imported a shipment of goods from Bangladesh and declared to CBP, through its customs broker, the value to be $10,215. Duties on the shipment were calculated based on this declared value. However, this did not reflect the actual value of the goods. The Bangladeshi manufacturer had sent Defendants two versions of the invoice describing these goods, one was identified as the "INVOICE For Payment," and reflected a $17,581.50 price for the goods, the second was identified as the "INVOICE FOR CUSTOME [sic]" and reflected a lower value of $10,214.70 for the same goods. The two versions of the invoice had the same invoice number, the same description of goods, and the same quantity of goods, the different was the price for the goods. Defendants provided the "INVOICE FOR CUMSTOME [sic]" to their customs broker, falsely declaring the value of the goods to be $7,366.80 less than Defendants actually paid for the goods, thereby fraudulently reducing the duties that they paid to CBP.

Example 20 (*see* 56.1 ¶¶ 90-92): On or about October 9, 2020, Delta Uniforms imported a shipment of goods from China and, through its customs broker, declared its value to be $9,600, Duties on the shipment were calculated based on this declared value. However, this did not reflect the actual value of the goods. A month earlier, the Chinese manufacturer had sent Defendants an invoice (in Excel format) for these goods with a price of $15,624. When Defendants provided an invoice to their customs broker for entry of the goods into the United States, the price of the goods reflected on the invoice had been reduced to $9,600, while the rest of the invoice remained identical. As a result, Defendants caused the goods to be falsely declared as $6,024 less than what Defendants actually paid for the goods, thereby fraudulently reducing duties that they paid to CBP.

The Court has discretion to determine the amount of the civil penalty within the statutory range. Given that the 20 false violations occurred between 2016 and 2020, the applicable FCA penalty range for each false statement is $13,508 - $27,018. *See* 31 U.S.C. § 3729(a)(1); 28 C.F.R. § 85.5(a); *see also Cook County v. United States ex re. Chandler*, 538 U.S. 119, 132 (2003); *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 501 F. Supp. 2d 51, 56 (D.D.C. 2007). The Government respectfully requests that the Court assess the maximum penalty for each of the 20 representative entries of falsely undervalued goods, for a total of FCA penalty of $540,360. The maximum penalty is appropriate here because the 20 examples constitute only a small subset of the "countless fraudulent" statements Defendants caused to be made to CBP during the ten-year period of their fraud. *See* 56.1 ¶ 21. Specifically, the 20 examples only relate to five years of the ten-year scheme (2010-2020) that Iloulian pleaded guilty to. Moreover, they only reflect a fraction of the shipments that resulted in the $249,000 underpayment of duties amount that Iloulian has

admitted to.[2]  Accordingly, assessment of the maximum penalty on the 20 examples is appropriate.
[3]

## CONCLUSION

For the foregoing reasons, the Court should grant the United States's motion and enter

judgment against Defendants, jointly and severally, in the amount of $1,287,360 (less any amount

paid in restitution in the criminal proceeding).

Dated:   New York, New York
       February 2, 2024

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
*Attorney for United States of America*

By:   */s/ Dominika Tarczynska*
      DOMINIKA TARCZYNSKA
      Assistant United States Attorneys
      86 Chambers Street, Third Floor
      New York, New York  10007
      Telephone:  (212) 637-2748
      dominika.tarczynska@usdoj.gov

---

[2] The total undervaluation amount for the 20 shipments is approximately $204,441.  *See* 56.1 ¶ 93. The duty rate paid on these 20 shipments, as reflected on the CBP Form 7501s, was between 3% and 16.5%.  Accordingly, the 20 examples represent a total underpayment of duties of between $6,133 and $33,732—only 2%-14% of the total loss that Defendants' conduct caused the United States.

[3] The imposition of a FCA treble damages and civil penalties liability upon the Defendants does not violate the Double Jeopardy Clause of the Fifth Amendment nor the Excessive Fines Clause of the Eighth Amendment. *See United States v. Anghaie,* 633 Fd. App'x 514, 519 (11th Cir. 2015); *United States v. Aleff*, 772 F.3d 508, 511-13 (8th Cir. 2014); *Karron*, 750 F. Supp. 2d at 493 n.12 (and cases collected therein).